**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

LINNETTE F. MONET-MOYANO

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CIVIL NO.: 23-1312 (MEL)

**OPINION AND ORDER**

**I.    Procedural and Factual Background**

Pending before the court is Linnette F. Monet-Moyano's ("Plaintiff") appeal from the decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability benefits under the Social Security Act. ECF No. 13. On June 30, 2020, Plaintiff filed an application for Social Security benefits, alleging that she initially became unable to work due to disability on December 1, 2019 ("the onset date"). Tr. 480-486 Before the onset date, Plaintiff worked as a school teacher. Tr. 28. Plaintiff met the insured status requirements of the Social Security Act through March 31, 2021. Tr. 23. Plaintiff's disability claim was denied on October 6, 2020, and upon subsequent reconsideration on February 26, 2021. Tr. 302-13, 315-32. Thereafter, Plaintiff requested a hearing on March 9, 2021, which was held on November 10, 2021, telephonically before an Administrative Law Judge (the "ALJ") "due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic" in which Plaintiff appeared and was represented by counsel. Tr. 34-48. On January 21, 2022, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 21-30.

After review of the ALJ's decision, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. Tr. 1-8. Plaintiff filed a complaint on June 13, 2013, challenging the ALJ's January 21, 2022, decision. ECF No. 3. The Commissioner opposed Plaintiff's challenge, and both parties have filed supporting memoranda. ECF Nos. 13, 18.

## II.     Legal Standard

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether her factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." *López-Vargas v. Comm'r of Soc. Sec.*, 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing *Da Rosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. *See Ortiz*, 955 F.2d at 769 (citing *Rodríguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." *Id*. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. *See generally* 20 C.F.R. § 404.1520; *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999); *Yuckert*, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed

3

to the next step. *See* 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If she is, then disability benefits are denied. *See* 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If she does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. *See* 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent her from doing the type of work she has done in the past. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by her mental and physical impairments. *See* 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's Residual Functional Capacity ("RFC"). *Id*. The claimant bears the burden of providing evidence to establish how her impairments limit her RFC. *See* 42 U.S.C. § 423(d)(5)(A); *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001). "An ALJ cannot rely on raw medical data; rather, she must look to physician's opinions to translate that evidence into functional terms." *Valentín-Rodríguez v. Comm'r of Soc. Sec*., 2014 WL 2740410, at *7 (D.P.R. June 17, 2014). If the ALJ concludes that plaintiff's impairment or impairments do prevent her from performing her past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy. 20 C.F.R.

§ 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

**C. The ALJ's Decision**

In the ALJ's January 2022 decision, the ALJ found that Plaintiff met the insured status requirement of the Social Security Act through March 31, 2021. Tr. 23. At step one of the sequential evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the onset date of December 1, 2019, through the date last insured. Tr. 23. At step two, the ALJ determined that Plaintiff had the following severe impairments: "anxiety disorder and major depressive disorder." Tr. 23. The Plaintiff also had non-severe impairments, which include but are not limited to, the following: "high blood pressure and hernia in the esophagus." Tr. 24. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 24. Next, the ALJ determined that during the relevant period:

> [Plaintiff] had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: able to understand, recall and carry out simple instructions. The claimant is limited to low stress jobs defined as occasional decision making, occasional interaction with coworkers, supervisors, and the public.

Tr. 25. At step four, the ALJ determined that during the relevant period, Plaintiff was unable to perform her past relevant work as a school teacher. Tr. 28. At step five, the ALJ presented Plaintiff's RFC limitations, as well as her age, education, and work experience to a vocational expert ("VE"). Tr. 29-30, 45-48. The VE testified that a hypothetical individual with a similar RFC would be able to perform the following representative occupations: marker, router, laundry laborer,

and sandwich maker. Tr. 45-46. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that Plaintiff was not disabled. Tr. 30.

## III. Legal Analysis

On appeal, Plaintiff objects to the ALJ's denial of disability benefits on two grounds. First, Plaintiff argues that the ALJ committed error in the formulation of her RFC. Second, Plaintiff argues that the ALJ's step five determination was unsupported. The court will address each of Plaintiff's arguments in turn.

### A. The ALJ's RFC Determination

While Plaintiff asserts various arguments challenging the ALJ's RFC determination, Plaintiff primarily appears to argue that the ALJ failed to properly consider two medical examinations as well as other pieces of medical evidence. ECF No. 13 at 12-23. For the following reasons, the court finds that the ALJ properly considered all relevant evidence in accordance with 20 C.F.R. §§ 404.1545, 404.1546. Therefore, the ALJ's determination was supported by substantial evidence.

#### a. Examination Reports

With regard to the first argument regarding the examination reports, Plaintiff alleges that the ALJ improperly considered reports by (i) disability examiner Lizabeth Cotto ("DE Cotto") and (ii) consultative examiner Dr. Pedro González Vega ("Dr. González Vega).[1]

##### i. Disability Examiner Lizabeth Cotto

First, Plaintiff contends that the ALJ erred in assigning more weight to State-agency consultants' determination that Plaintiff has a "moderate limitation" in her ability to interact with the public, while ignoring a note by DE Cotto at the initial level determining that Plaintiff should

---

[1] Dr. González Vega is not a physician, but he is a Doctor of Psychology (Psy.D.).

6

"not attend public." ECF 13 at 12-13. The Commissioner counters that DE Cotto is a disability examiner, who "works up the case, but is not qualified to offer 'medical opinions' or 'prior administrative medical findings' because those are reserved to the medical and psychological State-agency consultants." ECF 18 at 6. In the alternative, the Commissioner argues that even if DE Cotto's opinion could be accepted as a medical opinion, the ALJ correctly considered all medical opinions and weighed the evidence according to the law. *Id*. at 7.

DE Cotto's report does not qualify as a medical opinion. The Social Security regulations define medical opinions as "statements from physicians . . . or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), *and* your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2) (emphasis added). The opinion must describe whether the claimant has one or more impairment-related limitations or restrictions in the following abilities:

> Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> . . . .

20 C.F.R. § 404.1513(2). DE Cotto's "opinion" does not meet this standard. The report is bare bones and simply references record copies, including Plaintiff's various hospitalizations, a report by a consultative examiner, Plaintiff's medication and dosage history, and her symptoms, without discussing or providing judgments about the cited evidence. Tr. 306. DE Cotto's only assessment about the nature and severity of Plaintiff's impairments is short, stating:

> This [claimant] is 42 years old with college education. She has a mental RFC for simple and detailed work and should not attend public. Vocational history is incomplete. However, the [claimant] is a younger individual and the xpedite

7

> procedure applies. Voc rule 204.00 is used as frame of reference. A denial j1 is in order. LCN 10-5-2020.

*Id*. Not only is DE Cotto's note that Plaintiff "should not attend public" vague, it provides barely any guidance as to what Plaintiff can still do in the workplace and offers little insight, if any, into Plaintiff's functional limitations. An ALJ must assess the Plaintiff's degree of functional limitations in four areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The ALJ in this case would need to turn to other evidence in the record to make a determination as to Plaintiff's functional limitations, as DE Cotto's report does not provide sufficient information.

Even if required to consider DE Cotto's opinion, the ALJ's RFC determination is still supported by substantial evidence. As Plaintiff filed her case after March 27, 2017, the new standard requiring that ALJs not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [plaintiff's] medical sources" applies. 20 C.F.R. § 404.1520c. Instead, an ALJ must consider a series of five factors when considering medical opinions and prior administrative medical findings, the most important of which are "supportability" and "consistency." 20 C.F.R. § 404.1520c(b)(2); (c)(1)–(2) (the five factors being supportability, consistency, relationship with the plaintiff, specialization, and other factors). When assessing "supportability" the ALJ should find the opinion of a medical provider more persuasive "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[.]" 20 C.F.R. § 404.1520c(c)(1). Regarding "consistency," the ALJ shall compare the physician's opinion to the other evidence in the record, and "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

8

Here, in formulating Plaintiff's RFC, the ALJ cited to the findings of State-agency medical consultants, including State-agency psychological consultant Janice Calderón, Psy.D. at the initial level, and Bárbara Hernández, Psy.D., and Florentino Figueroa, M.D., at the reconsideration level. Tr. 25-28, 308-313, 322-332. The ALJ also relied on consultative examiner Dr. González Vega's report. *Id*. at 27, 679-688. These medical professionals collectively opined that, among other things, Plaintiff had a moderate limitation in the ability to interact appropriately with the public, coworkers, and supervisors. *See id*. at 307, 310, 327-28. The ALJ found these opinions "persuasive" and "supported by the evidence as a whole." *Id*. at 28. Furthermore, the ALJ did not defer to or give any specific evidentiary weight, including controlling weight, to any prior administrative findings or medical opinions. *See id*.

While the ALJ did not explicitly name DE Cotto in her findings[2], generally, "the more consistent an opinion is with the record as a whole, the more weight [an ALJ] will give to that opinion." 20 C.F.R. §§ 404.1527(c)(4). "[T]he responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on…the ALJ." *Seavey v. Barnhart*, 276 F.3d 1, 10 (1st Cir. 2001). Not only was DE Cotto's note regarding "should not attend public" vague, but Plaintiff did not cite to or reference any evidence to support a greater limitation with regard to her ability to interact with the public. Moreover, the ALJ's finding of a moderate limitation in this ability is supported by substantial evidence in the record. Tr. 308-313, 322-332. Consequently, Plaintiff's arguments challenging the ALJ's reasoning to discount DE Cotto's report need not be further addressed. ECF No. 13 at 12-13.

---

[2] The harmless error rule applies to the ALJ's failure to specifically mention DE Cotto's examination. *See e.g. Henke v. Astrue*, 798 Fed.Appx. 636, 641 (7th Cir. 2012) (applying harmless error standard to reject the claimant's argument that remand was warranted because the ALJ failed to mention a report by a state agency medical consultant).

### ii. Consultative Examiner Pedro González Vega

Plaintiff next argues that the ALJ failed to properly consider medical opinion evidence from Dr. González Vega. *Id.* at 13. Specifically, Plaintiff contends that the ALJ gave more weight to the opinion of the State-agency consultants over Dr. González Vega. ECF 13 at 13. This argument does not merit reversal for the following reasons.[3]

First, the ALJ did consider Dr. González Vega's examination of Plaintiff. Tr. 24-25, 27. The ALJ clearly stated that she carefully considered the entire record, explicitly acknowledging the consultative examination of Dr. González Vega on August 17, 2020, and providing her reasoning for the weight she assigned in her decision. *Id.* at 28. Second, Dr. González Vega's report was consistent with the State-agency medical opinions, as well as the ALJ's eventual RFC determination. Tr. 679-88. The State-agency psychological consultants even rely on and mention Dr. González Vega's examination in their determination. Tr. 303, 319. Lastly, and perhaps most importantly, Plaintiff does not sufficiently explain why the ALJ should have disregarded any of the State-agency opinions, nor does the Plaintiff explain how the outcome would have differed had the ALJ considered specific pieces of medical evidence or opinions by Dr. González Vega. *Rodríguez-Machado v. Shinseki*, 700 F.3d 48, 50 (1st Cir. 2012) ("[D]oing [Plaintiff's] work for her is not an option, since that would divert precious judge-time from other litigants who could have their cases resolved thoughtfully and expeditiously because they followed the rules."). In these circumstances, substantial evidence supports the ALJ's weighing of both DE Cotto and Dr. González Vega's opinions. Thus, Plaintiff's challenge fails.

---

[3] Plaintiff contends that both reports at the initial and reconsideration level required a consultative examination because "[t]he evidence as a whole, both medical and non-medical, is not sufficient to support a decision on the claim." ECF 13 at 13; Tr. 321. Plaintiff overlooks that a consultative examination was performed by Dr. González Vega, and it was considered at both the initial and reconsideration levels and by the ALJ in her determination.

### b. Other Medical Evidence

Next, Plaintiff argues the ALJ failed to take into consideration Plaintiff's diagnosis of bipolar type II, neglected to consider *all* of Plaintiff's hospitalizations, and misrepresented Plaintiff's history of suicidal ideation and self-harm. ECF No. 13 at 12-23.

### i. Bipolar Diagnosis

Plaintiff argues the ALJ should have considered Plaintiff's diagnosis of bipolar type II, which Plaintiff was diagnosed with a month after the date last insured. ECF 13 at 16; Tr. 275-76. Plaintiff admits that this diagnosis was outside of the relevant period, however, she argues that the diagnosis arises from her "long history of treatment," which had a combined impact along with her other medical conditions (anxiety and depression), and thus, should have been considered by the ALJ. *Id*. at 17, 19. In response, the Commissioner argues that evidence outside of the coverage period need not be considered by the ALJ in these circumstances, and, even if considered, Plaintiff fails to explain how the medical evidence would have changed the ALJ's RFC determination. ECF No. 18 at 9-13.

If a plaintiff fails to raise an impairment at the administrative level in their application for benefits or during the administrative hearing, the ALJ is not affirmatively obligated to consider that impairment. *Benítez v. Astrue*, 2011 WL 6778534, at *4 (D. Mass. Dec. 20, 2011. "This failure alone could dispose of [Plaintiff's' claim, as it has been persuasively held that an administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." *Street v. Barnhart,* 133 Fed. Appx. 621, 627 (11th Cir. 2005) ((citing *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996) (internal quotations omitted); *see also Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004). Plaintiff did not present a bipolar diagnosis or claim at the time of her application for benefits and made no

11

mention of bipolar disorder in any administrative hearing. Therefore, the ALJ was under no duty to consider it.

Even if Plaintiff had affirmatively mentioned this diagnosis, the ALJ was not required to consider it because Plaintiff was diagnosed after the relevant period. To qualify for Social Security disability benefits, a claimant has the burden to show that she was disabled during the coverage period, which is the time period between the alleged disability onset date and the date last insured. *See* 42 U.S.C. § 416(i); *Alcaide v. Sec'y of Health & Human Servs.*, 601 F. Supp. 669, 672 (D.P.R. 1985); *Sampson v. Califano*, 551 F.2d 881, 882 (1st Cir. 1977). Accordingly, evidence that does not pertain to proving disability during the coverage period should not be considered by an ALJ to determine whether the claimant is disabled. Nevertheless, "[m]edical evidence generated after a claimant's insured status expires may be considered for what light (if any) it sheds on the question whether claimant's impairment reached disabling severity before his insured status expired." *Padilla Pérez v. Sec'y of Health & Human Servs.*, 985 F.2d 552, at *5 (1st Cir.1993) (unpublished) (citing *Deblois v. Sec'y of Health & Human Servs.*, 686 F.2d 76, 81 (1st Cir.1982); *Alcaide*, 601 F. Supp. at 672–73). However, Plaintiff does not cite to or reference specific evidence to show that she had been suffering from bipolar during the relevant period. Plaintiff does cite generally to her long history of treatment for medical conditions and argues that the treatment could have been for a bipolar diagnosis. ECF 13 at 17. However, there is no evidence beyond speculation that this history of treatment was to treat bipolar disorder or that plaintiff had been suffering from bipolar disorder prior to her diagnoses. ECF 13 at 17. In other words, Plaintiff did not effectively point to any evidence that her diagnosis of bipolar disorder after the insured period would shed light on the "question whether claimant's impairment reached disabling severity before his insured status expired." *Padilla Pérez v. Sec'y of Health & Human Servs.*, 985 F.2d 552, at *5 (1st Cir.1993)

(unpublished) (citing *Deblois v. Sec'y of Health & Human Servs.*, 686 F.2d 76, 81 (1st Cir.1982); *Alcaide*, 601 F. Supp. at 672–73).

Moreover, Plaintiff argues that the ALJ erred by considering evidence from the hospitalization where Plaintiff was diagnosed with bipolar but not considering the diagnosis itself. ECF 13 at 20. The information contained in Plaintiff's hospitalization from April 18, 2021 to April 23, 2021, beyond the diagnosis, is consistent with all other medical evidence in the record. Tr. 276-280. The ALJ explicitly considered Plaintiff's long history of treatment for her diagnosed mental conditions (anxiety and depression), including her medication history, her various hospitalizations related to her diagnoses, and her history of suicidal ideation and self-harm. Tr. 26-28. The court will not reweigh the evidence, something outside of the court's purview. *Candelaria v. Comm'r of Soc. Sec.*, No. CV 19-1303, 2021 WL 9098265, *2 (D.P.R. Jan. 21, 2021) ("[W]eighing the evidence is the ALJ's prerogative.").

Lastly, and perhaps most important, Plaintiff did not show how the ALJ's analysis at step three would have changed if the bipolar diagnosis were considered. Listing 12.04 encompasses depressive, bipolar, and related disorders and in order to meet the listing, you must meet the requirements of either paragraph A and B, or paragraph A and C. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04. Plaintiff would still not meet or equal the criteria of listing 12.04 because depressive disorder and bipolar disorder are both considered under paragraph A, and the ALJ found that the Plaintiff did not meet the criteria of either paragraph B or C. Tr. 25.

### ii. History of Hospitalizations and Evidence of Suicidal Ideation

Intertwined with her argument regarding the bipolar diagnosis, Plaintiff contends the ALJ did not consider *all* of Plaintiff's hospitalizations and misrepresented her history of suicidal ideation in violation of an ALJ's "obligation to consider all relevant medical evidence." *Id*. at 18-

20 (citing *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017). However, this argument misrepresents the ALJ's determination. In her decision, the ALJ considered Plaintiff's hospitalizations, medication history, and subjective account of her symptoms. Tr. 26-28. "The ALJ was not required to discuss every piece of evidence that favored" Plaintiff, and her decision must be affirmed so long as it is supported by substantial evidence. *Santiago v. Sec'y of Health & Hum. Servs.*, 46 F.3d 1114, at *4 (1st Cir. 1995); *Rodríguez Pagán*, 819 F.2d at 3. The ALJ explicitly considered Plaintiff's history of suicidal ideation and accurately explained the evidence of record, which shows Plaintiff had a history of suicidal ideation and suicide attempts but, she had "adequate response to treatment," and did not, at that time, suffer from "suicidal ideation, homicidal intention, or psychosis." Tr. 27. The ALJ based this conclusion on Plaintiff's own reported symptoms during the consultative examination, where she told Dr. González Vega that she did not currently have suicidal/homicidal ideation and the last time she did was a year prior to the consultative examination. *Id*. at 681-82. Dr. González Vega concluded that Plaintiff had "adequate social judgment and slightly diminished attention and concentration levels," "denied suicide ideations or hallucinations," presented some symptoms of "depression and anxiety," but her "chronic mental health disorder" was "relatively stable at the moment." *Id*. at 686. As previously discussed, State-agency consultants relied on Dr. González Vega's findings regarding her mental stability as it pertained to hospitalizations, suicidal ideations, and medication regime. *Supra* p. 9; *Id*. at 25-28, 307, 308-313, 322-332. Thus, the ALJ's finding that Plaintiff's mental impairment "should be amenable to proper control by adher[ing] to recommended medical management and medication compliance" was supported by substantial evidence because the ALJ relied on the opinions of the consulting psychologists to form Plaintiff's mental RFC. Tr. 27. Thus, the ALJ's conclusion was supported by substantial evidence and remand is unwarranted.

Lastly, Plaintiff fails to explain how each piece of medical evidence would have affected her ability to work or how the RFC would have changed as a result. Without such a showing, Plaintiff's argument invites the court to reweigh the evidence, something outside of the court's purview. *Candelaria v. Comm'r of Soc. Sec.*, No. CV 19-1303, 2021 WL 9098265, *2 (D.P.R. Jan. 21, 2021) ("[W]eighing the evidence is the ALJ's prerogative."). While this court could continue to undertake an exploratory journey in the record to verify the merit of Plaintiff's argument, doing so would encourage Plaintiff's counsel to continue submitting briefs with skeletal arguments. *See United States v. Oliver*, 878 F.3d 120, 127 (4th Cir. 2017) ("Habitual sua sponte consideration of a forfeited issue disincentivizes vigorous advocacy and thereby chips away at the foundation of our justice system."). As Plaintiff has failed to show error in the ALJ's assessment of Plaintiff's medical evidence in determining her RFC, remand is not warranted.

### B. The ALJ's Step Five Determination

In her final argument, Plaintiff alleges that ALJ did not resolve a conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"), and therefore did not comply with Social Security Rule ("SSR") 00-4p. ECF 13 at 23-24. However, the court finds the ALJ did comply with this rule and made no error at step 5.

SSR 00-4p requires that "[w]hen vocational evidence provided by a VE…is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE…evidence to support a determination or decision that the individual is or is not disabled." SSR 00-4p, 2000 WL 1898704, at *4. Plaintiff contends that the ALJ failed to resolve the inconsistency between the ALJ's limitation to carry out "simple instructions" and the General Educational

Development[4] ("GED") reasoning level of "two" assigned by the DOT, which requires the ability to carry out "detailed instructions." ECF 13 at 23-24.

However, the ALJ need only resolve such conflicts when they are "apparent" and "identified." SSR 00-4p, 2000 WL 1898704, at *2 ("When there is an apparent unresolved conflict between VE ... evidence and the DOT, the adjudicator must elicit a reasonable explanation...."); *see also Donahue v. Barnhart*, 279 F.3d 441, 446-47 (7th Cir. 2002) (finding that SSR 00-4p "requires an explanation only if the discrepancy was 'identified' "); *Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000) ("[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.").

Here, Plaintiff's counsel failed to object to or identify the issue during the VE's testimony at the hearing. *See id*., Tr. 34-48. Furthermore, "DOT-assigned GED reasoning levels two and three have both been found to be consistent with an RFC limitation to simple and unskilled tasks." *Cruz Madera v. Saul*, 2021 WL 9100419, at *13 (D.P.R. Feb. 26, 2021). Therefore, there is no violation of SSR 00-4p.

---

[4] The DOT specifies the general educational requirements including the level of reasoning skills required for each job. A job rated reasoning level one requires the ability to understand and carry out simple instructions, whereas a job rated reasoning level two requires the ability to understand and carry out detailed instructions. Reasoning level three defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and [d]eal with problems involving several concrete variables in or from standardized situations." DOT, Vol. II at 1011, vol. 1 at 281.

## IV.     Conclusion

Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence and contained no legal error. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of September, 2024.

s/Marcos E. López  
U.S. Magistrate Judge